IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| RONALD BYRD | : | CIVIL ACTION |
|---|---|---|
| | : | |
| v. | : | No. 19-504 |
| | : | |
| SPECIAL AGENT PATRICK MANGOLD, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                 **October 28, 2019**

Plaintiff Ronald Byrd brings this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Special Agent Patrick Mangold, City of Philadelphia Police Officer Gregory Gillespie, former Philadelphia District Attorney Seth Williams, former Pennsylvania Attorney General Kathleen Kane, the City of Philadelphia, and the Commonwealth of Pennsylvania. Byrd alleges violations of his Fourth and Fourteenth Amendment rights arising out of his arrest and prosecution on charges that were ultimately withdrawn. Byrd asserts constitutional claims for false arrest, false imprisonment, and malicious prosecution. He also asserts a host of related state law claims. All Defendants move to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The Commonwealth and former Attorney General Kane also move to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Because Byrd's constitutional claims are barred by the applicable statute of limitations, the Court will grant Defendants' motions to dismiss as to those claims, which will be dismissed with prejudice. Byrd's state law claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). Finally, because the Commonwealth and former Attorney General Kane are entitled to sovereign immunity, the Court will grant their motions and dismiss all claims against them with prejudice.

## BACKGROUND[1]

On July 25, 2015, Defendant Special Agent Patrick Mangold applied for a search warrant to search for firearms at a residence located at 2234 W. Ontario Street, Philadelphia (the Residence). Compl. ¶ 14. In his sworn Affidavit of Probable Cause in support of the search warrant (the Search Warrant Affidavit), Agent Mangold described an exchange of firearms that occurred at the Residence on July 24, 2015. *Id.* He alleged that a credible and reliable source identified Nyeem Gordon as an individual who exchanged firearms with Melanie Barbour, the alleged girlfriend of Nyeem Gordon's brother, Hakeem Gordon, at the Residence, where Barbour lived. The Search Warrant Affidavit stated Barbour, on behalf of Hakeem Gordon, provided Nyeem Gordon with a .38 caliber revolver in exchange for a .40 caliber Glock handgun, on July 24, 2015.

Later that same day, Agent Mangold, accompanied by Philadelphia SWAT Unit Police Officers, executed the search warrant at the Residence. Police recovered a .40 caliber Glock handgun and other firearms from the Residence. After executing the search warrant, Agent Mangold presented Barbour with an Instagram photograph of Byrd. Compl. ¶ 18. Barbour initially told Agent Mangold that Byrd was not the person who gave her the .40 caliber Glock handgun. *Id.* ¶ 20. She later identified Byrd and signed a statement falsely implicating him in the gun exchange after Agent Mangold threatened her with immediate arrest if she did not do so. *Id.* ¶¶ 19, 21–22.

---

[1] The following facts are taken as true from Byrd's Complaint, whose "well-pleaded factual allegations" the Court must accept as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); the dockets from the criminal proceedings against Byrd, matters of public record that may be considered at the motion to dismiss stage, *see Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); and the affidavits of probable cause in support of the search and arrest warrants at issue as "undisputedly authentic documents," on which Byrd's claims are based, which may also be considered at the motion to dismiss stage, *id.* The Court may also consider exhibits attached to Defendants' motions to dismiss if they are referred to in the Complaint. *See Pension Ben. Guar. Corp.*, 998 F.2d at 1196 (holding courts may consider a defendant's attached exhibit to a motion to dismiss if the plaintiff's claims are based on the document).

On September 16, 2015, Agent Mangold sought a warrant for Byrd's arrest. In the Affidavit of Probable Cause in support of the arrest warrant (the Arrest Warrant Affidavit), Agent Mangold falsely alleged that on July 25, 2015, the same reliable and credible source who provided the information in the Search Warrant Affidavit identified Byrd as the individual who transferred the .40 caliber Glock handgun to Barbour, identified Albert Shields as Barbour's boyfriend, and alleged Shields and Byrd conspired to illegally transfer firearms. Agent Mangold, through the Philadelphia District Attorney's Office, filed felony firearm charges against Byrd and Shields. Barbour was neither arrested nor prosecuted.

On September 17, 2015, Byrd was arrested and charged with three violations of the Pennsylvania Uniform Firearms Act and criminal conspiracy. *Id.* ¶ 26. Byrd's preliminary arraignment was held on September 18, 2015. *See* Def. Williams's Ex. A (municipal court docket), ECF No. 7-1. At the arraignment, Agent Mangold requested a high bail of $750,000, which Byrd was unable to pay. As a result, Byrd remained incarcerated while the criminal charges were pending.

At Byrd's preliminary hearing, Agent Mangold and Defendant Officer Gregory Gillespie conspired to present false testimony against Byrd. Officer Gillespie testified that on July 24, 2015, at approximately 1:00 p.m., he personally observed Byrd exit the front passenger seat of an Audi A8 and enter the Residence. Compl. ¶ 31. He further falsely represented that he observed Byrd exit the Residence and re-enter the front passenger side of the Audi A8, which then drove away. *Id.* Byrd alleges Agent Mangold also presented false testimony to the court by asserting Byrd was involved in illegally transferring firearms on July 24, 2015. *Id.* ¶ 32.

Byrd was subsequently held for trial on all charges, and his case was transferred to the Court of Common Pleas. On November 5, 2015, the Commonwealth, through the Philadelphia

District Attorney's Office, provided Byrd with "partial criminal discovery" pursuant to Pennsylvania Rule of Criminal Procedure 573; however, the Search Warrant Affidavit was "conspicuously omitted from the discovery package provided to Byrd." *Id.* ¶ 35. Byrd repeatedly requested the Search Warrant Affidavit, but it was never produced to him. *Id.* ¶ 36. On March 14, 2016, the Commonwealth and Philadelphia District Attorney's Office withdrew all charges against Byrd.

Almost a year later, on February 6, 2017, Byrd received a copy of the Search Warrant Affidavit from Shields, his co-defendant in the criminal case, and learned for the first time the facts described therein. *Id.* ¶ 37. Byrd alleges Defendants maliciously and willfully obstructed him from securing the Search Warrant Affidavit.

Byrd filed this action on February 4, 2019, asserting constitutional claims for false arrest, false imprisonment, and malicious prosecution in violation of his Fourth and Fourteenth Amendment rights. He also alleges state tort claims for false arrest, false imprisonment, malicious prosecution, abuse of process, assault and battery, civil conspiracy, and intentional infliction of emotional distress. According to the Complaint, Byrd sues Agent Mangold and Officer Gillespie in their official and individual capacities. He also asserts claims against former Attorney General Kathleen Kane, former Philadelphia District Attorney Seth Williams, the City of Philadelphia, and the Commonwealth of Pennsylvania.[2] All Defendants have moved separately to dismiss the Complaint. The Court heard oral argument on the motions on October 7, 2019.

---

[2] Although the Complaint is unclear as to whether former Attorney General Kane and former District Attorney Williams are sued in their official or individual capacities, at oral argument, Byrd clarified he sues these defendants only in their official capacities.

**DISCUSSION**

To withstand dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The statute of limitations is an affirmative defense that ordinarily should be raised in a defendant's answer. *See Robinson v. Johnson*, 313 F.3d 128, 134–35 (3d Cir. 2002). The statute of limitations may be raised in a motion to dismiss only when "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Unless the time bar is apparent on the face of the complaint, it may not afford the basis for dismissal of the complaint under Rule 12(b)(6). *See id.* While a court may entertain a motion to dismiss on statute of limitations grounds, it may not allocate the burden of invoking the discovery rule in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense. *See id.* at 252.

All Defendants move to dismiss the Complaint on the ground that Byrd's claims are barred by the applicable statutes of limitations. The statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). "The statute of limitations for a § 1983 claim arising in Pennsylvania is two years." *Id.* The accrual date of a § 1983 cause of action, however, is a question of federal law and is not resolved by reference to state law. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007).

Accrual occurs when the plaintiff has a complete and present cause of action, "that is, when the plaintiff can file suit and obtain relief." *Id.*

Byrd's § 1983 claim is set forth in Count I of the Complaint. Although captioned as a claim for "Unconstitutional Arrest and Seizure - Fourth Amendment § 1983," this count challenges not only Byrd's allegedly unlawful arrest and seizure, but also his allegedly "unlawful detention and incarceration," and "malicious, abusive and fraudulent prosecution." Compl. ¶¶ 44–46. The Court therefore interprets Count I to allege Fourth and Fourteenth Amendment violations for false arrest, false imprisonment, and malicious prosecution.

A claim for false arrest or false imprisonment under § 1983, accrues "when a plaintiff 'appears before the examining magistrate and is bound over for trial,' i.e., 'once the victim becomes held pursuant to legal process.'" *Geness v. Cox*, 902 F.3d 344, 354–55 (3d Cir. 2018) (quoting *Wallace*, 549 U.S. at 384, 389, 391). The Supreme Court has recognized "[o]nce an arrestee is subject to such legal process, any detention thereafter forms damages for a malicious prosecution claim, but not for false arrest or false imprisonment claim." *Wallace*, 549 U.S. at 389. "[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest [or false imprisonment] in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Id.* at 397. In a claim for malicious prosecution under § 1983, however, the claim accrues once proceedings against the criminal defendant are dismissed. *See Backof v. N.J. State Police*, 92 F. App'x 852, 855 (3d Cir. 2004) (citing *Smith v. Holtz*, 87 F.3d 108, 110 (3d Cir. 1996)).

Byrd's Fourth Amendment claims for false arrest and false imprisonment accrued as soon as Byrd was "held pursuant to legal process." *Geness*, 902 F.3d at 355. According to the docket in Byrd's criminal case, this occurred on September 18, 2015—the date of Byrd's preliminary

6

arraignment. *See* Williams's Ex. A (Byrd's municipal court docket), ECF No. 7-1. The statute of limitations on the false arrest and false imprisonment claims thus expired on September 18, 2017, well before this case was filed on February 4, 2019. Because it is clear on the face of the Complaint Byrd's Fourth Amendment false arrest and false imprisonment claims are time-barred, the Court will dismiss them with prejudice.

Byrd's Fourth Amendment malicious prosecution claim accrued when the proceedings against Byrd were dismissed. *See Backof*, 92 F. App'x at 855. The statute of limitations thus began to run on March 14, 2016—when the charges against Byrd were withdrawn—and expired on March 14, 2018. As a result, absent a basis to toll the statute of limitations, this claim is also time-barred.[3] Byrd argues his malicious prosecution claim is subject to tolling under either the discovery rule or the fraudulent concealment doctrine. *See, e.g.*, Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss 12–19, ECF No. 8.

When, as here, a federal court borrows a state statute of limitations, state tolling principles also apply. *See Kach*, 589 F.3d at 639 ("The general rule is that state tolling principles also govern § 1983 claims."). Pennsylvania allows a statute of limitations to be tolled by the discovery rule "[w]here a plaintiff could not reasonably have discovered his injury or its cause." *Knopick v. Connelly*, 639 F.3d 600, 607 (3d Cir. 2011). In applying the discovery rule, the appropriate

---

[3] Although it is not clear from the Complaint, it is possible Byrd asserted another Fourth Amendment claim for his post-legal-process pretrial detention without probable cause pursuant to *Manuel v. City of Joliet*, 137 S. Ct. 911, 919–20 (2017). The accrual date for this claim is unsettled, and the Supreme Court and the Third Circuit have both declined to opine on the issue. *See Manuel*, 137 S. Ct. at 922; *Geness*, 902 F.3d at 355 n.6. Nevertheless, the two accrual dates considered include either (1) the date one is bound over for legal process, like a claim for false arrest or false imprisonment, or (2) the date upon dismissal of criminal charges, like a claim of malicious prosecution. *See Manuel*, 137 S. Ct. 921–22; *Geness*, 902 F.3d at 355 n.6. At the latest, this claim accrued at the same time as the malicious prosecution claim. Accordingly, the Court's analysis of the malicious prosecution claim will also decide any alleged post-legal-process pretrial detention claim.

question is "whether the injured party had sufficient notice of the invasion of his legal rights to require that he investigate and make a timely claim or risk its loss." *Zeleznik v. United States*, 770 F.2d 20, 23 (3d Cir. 1985). The accrual date is not postponed until the injured party knows every fact necessary to bring his action. *See id.* "Once an injured party is put on notice, the burden is upon him to determine within the limitations period whether any party may be liable to him." *Id.*

Byrd argues he is entitled to tolling under the discovery rule because he had no reason to investigate Defendants' malfeasance until February 2017, when Shields provided him with the Search Warrant Affidavit that Defendants improperly withheld. Byrd states he had no duty to investigate until "something gives him reason to do so." Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss 16, ECF No. 8. Byrd's argument is unpersuasive. "The discovery rule does not apply, where . . . plaintiff could reasonably have discovered" the relevant facts. *Gleeson v. Prevoznik*, 253 F. App'x 176, 180 (3d Cir. 2007). "There are very few facts which diligence cannot discover." *Id.* (quoting *Vernau v. Vic's Mkt., Inc.*, 896 F.2d 43, 46 (3d Cir. 1990)). In this case, Byrd knew on the date the charges were withdrawn that the prosecution did not have a case. He also knew he did not commit the crimes for which he had been arrested and prosecuted. And he had reason to know of his injury by virtue of having spent six months in jail for crimes he did not commit.

Byrd may not have known of the facts alleged in the Search Warrant Affidavit—that Agent Mangold had initially identified Nyeem Gordon, not Byrd, as the person who went to the Residence on July 24, 2015, to exchange a gun—until later. But, the Complaint makes clear Byrd knew the Search Warrant Affidavit existed and was being withheld.[4] *See* Compl. ¶ 36 ("Despite

---

[4] In fact, in his Response to the City of Philadelphia's motion to dismiss, Byrd stated Defendants withheld the Search Warrant Affidavit, "despite their affirmative obligation to disclose the exculpatory information and repeated requests from Plaintiff Byrd in the *underlying criminal proceedings.*" *See* Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss 16, ECF No. 8 (emphasis added).

Mr. Byrd's repetitive requests for the [Search Warrant Affidavit], [it] was never provided by Defendants to Mr. Byrd."). This is sufficient to place the responsibility on Byrd to investigate and bring a claim within two years or risk its loss. *Cf. Evans v. Gloucester Twp.*, 124 F. Supp. 3d 340, 352 (D.N.J. 2015) (stating plaintiff may not have known every fact necessary to bring false arrest claim but was on notice because she knew she was innocent and knew from the circumstances, police likely lacked probable cause). If anything, the "alleged omission of the affidavit would heighten a reasonably diligent person's awareness of a possible cause of action." *Marsh v. Ladd*, No. 03-5977, 2004 WL 2441088, at *5 (E.D. Pa. Oct. 27, 2004).

Also, Byrd does not allege the Arrest Warrant Affidavit was withheld. The Arrest Warrant Affidavit explicitly references the Search Warrant Affidavit. *See* Pl.'s Ex. B, ECF No. 9. It is reasonable for Byrd to have sought the Search Warrant Affidavit during criminal discovery, but the failure to receive it does not toll his statute of limitations.

Byrd knew on March 14, 2016, the charges against him were withdrawn and any related injury would have been caused by Defendants. Of course, the Search Warrant Affidavit strengthened Byrd's claim, but it is nonetheless insufficient to toll the accrual date for the statute of limitations period. Had Byrd acted with reasonable diligence following his release on March 14, 2016, he would have received the Search Warrant Affidavit within the applicable time period. He was provided with the Search Warrant Affidavit on February 6, 2017, well within the two-year statute of limitations period. The Court concludes the discovery rule does not apply in this case to toll the accrual date of Byrd's Fourth Amendment malicious prosecution claim. *See Akinola v. John Doe 1*, 165 F. App'x 242, 244 (3d Cir. 2006) (declining to apply the discovery rule to plaintiff's malicious prosecution claim when plaintiff could have exercised due diligence to discover a grand jury "no bill" giving rise to claim).

Byrd's argument for tolling based on the fraudulent concealment doctrine is similarly unpersuasive. Fraudulent concealment tolls the statute of limitations period when a defendant, through an independent affirmative act of concealment, "causes the plaintiff to relax [his] vigilance or deviate from[his] right of inquiry." *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 556 (3d Cir. 1985). Fraudulent concealment—like fraud—must be pleaded with particularity in the Complaint. *Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 626 (3d Cir. 1984) ("We agree, of course, that fraud, and thus fraudulent concealment, must be pleaded with particularity.").

First, the Complaint includes no factual allegations suggesting Defendants actively misled him or that he was prevented from recognizing the validity of his claim within the limitations period. Byrd does not allege Defendants told him the Search Warrant Affidavit did not exist. He does not allege he was actually misled into believing he did not have a cause of action. *See Forbes v. Eagleson*, 228 F.3d 471, 487 (3d Cir. 2000) (stating a plaintiff alleging fraudulent concealment must show "he actually was misled into thinking that he did not have a cause of action").

The Complaint's closest allegation of fraud is Officer Gillespie's false testimony that he personally observed Byrd involved in the gun exchange. If Byrd did not participate in the gun exchange (as he continually maintains his innocence), then he was on notice of the alleged false testimony stating he *did* participate in the gun exchange at the time Officer Gillespie testified and Byrd was present to hear such testimony. This allegation does not support Byrd's claim of fraudulent concealment. *See In re Processed Egg Prods. Antitrust Litig.*, No. 08-2002, 2011 WL 5980001, at *15 (E.D. Pa. Nov. 30, 2011) (holding plaintiff failed to sufficiently allege fraudulent concealment in complaint to toll statute of limitations).

Second, because the Search Warrant Affidavit was not necessary for Byrd to be on notice of his claim, as discussed above, the withholding of the Search Warrant Affidavit could not

reasonably have caused Byrd to relax his vigilance in pursuing or investigating the claims. Tolling under the fraudulent concealment doctrine "lasts only until the plaintiff knows, or should reasonably be expected to know, the concealed facts supporting the cause of action." *Forbes*, 228 F.3d at 487 (internal quotation marks and citations omitted). At the time Officer Gillespie testified he saw Byrd participate in the gun exchange, and Byrd knew he did not participate in the gun exchange, Byrd was on notice of his claim. When Defendants withdrew the charges against Byrd, he was further on notice they did not have a case against him—possibly because he did not participate in the gun exchange. The withholding of the Search Warrant Affidavit, which Byrd knew existed, should have heightened his awareness of the plausibility of his claim. It is implausible to invoke fraudulent concealment for the Defendants' failure to produce a document that was not necessary for Byrd to be on notice of his claims under the discovery rule. The Court concludes the statute of limitations on the malicious prosecution claim was not tolled due to Defendants' alleged fraudulent concealment. Therefore, because neither of the tolling doctrines invoked by Byrd applies, Byrd's Fourth Amendment claim for malicious prosecution is time-barred. The Court will dismiss this claim with prejudice.

The Court having dismissed all of Byrd's § 1983 claims because they are time-barred, the Court declines to exercise supplemental jurisdiction over Byrd's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction.").[5] The Court will dismiss Byrd's state law claims against Defendants Agent

---

[5] Defendants also urge the Court to dismiss Byrd's state law claims based on the statute of limitations. Although the Court is not addressing the state law claims, at oral argument, Byrd conceded his state law assault and battery claims are time-barred.

Mangold, Officer Gillespie, former District Attorney Williams, and the City of Philadelphia, without prejudice.

Although the Court will dismiss Count I with prejudice against all Defendants, the Commonwealth and former Attorney General Kane also moved this Court to dismiss all of Byrd's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(1). The Commonwealth and former Attorney General Kane assert they are entitled to sovereign immunity under the Eleventh Amendment and as a result, the Court lacks subject matter jurisdiction. At oral argument, Byrd conceded the Commonwealth is entitled to sovereign immunity and did not oppose its motion. *See* Pl.'s Resp. to Def.'s Mot. to Dismiss, ECF No. 16. The Court will dismiss all of Byrd's claims against the Commonwealth for lack of subject matter jurisdiction. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996) ("[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction.").

As for former Attorney General Kane, Byrd clarified he sues her only in her official capacity. The claims against former Attorney General Kane are thus subject to dismissal on sovereign immunity grounds like the claims against the Commonwealth. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (stating immunities available to a defendant in his or her official capacity are those the governmental entity possesses); *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (stating department that is part of the Commonwealth shares in Eleventh Amendment immunity). As a result, the Court will also dismiss all of Byrd's claims against former Attorney General Kane because she is entitled to sovereign immunity, which deprives the Court of subject matter jurisdiction. *See Addlespurger v. Corbett*, 461 F. App'x 82, 86 (3d Cir. 2012) ("Any official capacity claim fails because the Pennsylvania Office of the Attorney General . . . share[s] in the

immunity conferred to the States by the Eleventh Amendment."). In sum, all of Byrd's claims against the Commonwealth and former Attorney General Kane will be dismissed with prejudice.

**CONCLUSION**

Because the statute of limitations bars Byrd's § 1983 claims, the Court will grant all Defendants' motions as to Count I with prejudice. Because the Court declines to exercise supplemental jurisdiction over Byrd's remaining state law claims, the Court will deny the motions filed by Agent Mangold, Officer Gillespie, former District Attorney Williams, and the City of Philadelphia as to those claims. The Court will nonetheless dismiss the remaining state law claims against those Defendants without prejudice pursuant to 28 U.S.C. § 1367(c)(3). Finally, the Court will grant the Commonwealth and former Attorney General Kane's motions and dismiss all of Byrd's claims against them with prejudice.

Although the Court would normally give a civil rights plaintiff leave to amend his complaint to correct any pleading deficiencies, *see Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245–46 (3d Cir. 2008), the Court will not grant leave to amend in this case because such leave would be futile. The Court does not find fraudulent concealment, even if properly pleaded with particularity, applies in this case.

An appropriate order follows.

BY THE COURT:

 /s/ Juan R. Sánchez  
Juan R. Sánchez, C.J.